1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JUDGE CALLIES, III,                        No. 2:14-cv-1609 GEB AC (TEMP)

12                  Petitioner,

13           v.

14   ERIC ARNOLD, Warden,                       FINDINGS AND RECOMMENDATIONS

15                  Respondent.

16

17          Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

19   entered against him on May 30, 2012, in the Sacramento County Superior Court on charges of

20   robbery and kidnapping to commit robbery.  He seeks federal habeas relief on the grounds that

21   jury instruction error violated his right to due process.  Upon careful consideration of the record

22   and the applicable law, the undersigned recommends that petitioner's application for habeas

23   corpus relief be denied.

24      **I.      Background**

25          In its unpublished memorandum and opinion affirming petitioner's judgment of

26   conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

27   following factual summary:

28   /////

                                                   1

A jury convicted defendant Judge Callies of robbery and kidnapping to commit robbery. Defendant now contends (1) the trial court erred in instructing the jury with the last bracketed paragraph in CALCRIM No. 226 [witnesses], and (2) the abstract of judgment must be corrected to reflect a sentence of life with the possibility of parole, rather than seven years to life in prison. We conclude there was no instructional error and the abstract of judgment correctly reflects the sentence imposed by the trial court. We will affirm the judgment.

**BACKGROUND**

Eric Scott drove into a parking space at a taco stand and bumped another car. Defendant and another man claimed the car was theirs and asked Scott to pay for the damage. Scott gave defendant $20 or $30, but defendant said that was not enough money. Defendant offered to go with Scott to a bank to get more money. Scott construed the "offer" as a demand. Defendant had his hand in his pocket and Scott thought defendant might have a gun. Fearing for his safety, Scott drove with defendant to an ATM, withdrew $160, and gave it to defendant.

Defendant suggested Scott's car stereo could be used to make up the balance on the money "owed" for car repairs. Scott disagreed, but defendant instructed him to drive to an apartment complex. Scott realized a car was following them and became more worried he would be hurt.

At the apartment complex, defendant started taking the dashboard apart to remove the car stereo. He obtained metal cutters from his friend, Jibri Stepter, and continued trying to remove the stereo. Stepter took Scott's wallet and left. Defendant told Scott to hand over his car keys; he also took Scott's cell phone. Defendant then drove Scott around asking strangers for a screwdriver that he could use to remove the car stereo. When one man offered them a butter knife, defendant rejected the offer by pointing his gun at the man. Eventually, defendant removed the stereo from Scott's car and returned the car to Scott. Scott returned to the taco stand, borrowed a cell phone and called the police.

Defendant testified he thought Scott looked like an "easy target." The car Scott hit did not belong to either defendant or his friend, but when defendant saw the collision he decided to con Scott out of money. He told Scott the damage could be covered by $100 to $200 and when Scott informed defendant he only had $30 on him, defendant offered to go with him to an ATM. Scott came back from the ATM with $160 and defendant tried to convince him to include the car stereo in the deal. According to defendant, Scott agreed and they went to an apartment complex. Stepter followed them from the taco stand. Stepter gave defendant pruning shears and defendant used them to remove the car stereo. He then told Scott how to get back to the taco stand. Defendant denied having a gun and denied ever driving Scott's car. Defendant acknowledged Stepter took Scott's cell phone and perhaps his wallet, but he did not see Stepter with a gun.

2

1
2

> Defendant admitted he was a liar and a thief.  He testified at trial that most of his prior denials were lies, but he said he was telling the truth at trial.

3
4
5
6

> A jury found defendant guilty of kidnapping to commit robbery (Pen.Code, § 209, subd. (b)(1) – count one)[1] and robbery (§ 211 – count two).  The trial court sentenced defendant to seven years to life in prison on count one, stayed sentence on count two pursuant to section 654, awarded 356 days of presentence custody credit and ordered defendant to pay various fines and fees.

7   People v. Callies, No. C071609, 2013 WL 2433814, at *1-2 (Cal. Ct. App. June 5, 2013).

8          After the California Court of Appeal affirmed his judgment of conviction, petitioner filed

9   a petition for review in the California Supreme Court, claiming that jury instruction error violated

10  state law and his federal right to due process.  (Resp't's Lod. Doc. 4.)  That petition was

11  summarily denied.  (Resp't's Lod. Doc. 5.)

12  **II.     Standards of Review Applicable to Habeas Corpus Claims**

13         An application for a writ of habeas corpus by a person in custody under a judgment of a

14  state court can be granted only for violations of the Constitution or laws of the United States.  28

15  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

16  application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

17  U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

18         Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

19  corpus relief:

20
21
22

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

23
24

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

25
26

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

27

28  [1]  Undesignated statutory references are to the Penal Code.

3

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Id.  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

4

1   'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

2   Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

3   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

4   must show that the state court's ruling on the claim being presented in federal court was so

5   lacking in justification that there was an error well understood and comprehended in existing law

6   beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

7        The federal habeas court looks to the last reasoned state court decision as the basis for the

8   state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th

9   Cir. 2004). Where, as here, a claim is rejected in a reasoned decision by the intermediate court of

10  appeal and the state supreme court summarily denies review, the opinion of the intermediate court

11  of appeal is the subject of habeas review in this court. See Ortiz v. Yates, 704 F.3d 1026, 1034

12  (9th Cir. 2012).

13  **III.    Petitioner's Jury Instruction Claim**

14       In his sole ground for federal habeas relief, petitioner claims that the trial court violated

15  his right to due process when it instructed the jury with an optional paragraph of CALCRIM No.

16  226. The California Court of Appeal explained the background to this claim, and the basis for its

17  ruling, as follows:

18
19
20
21
> Defendant contends the trial court erred in instructing the jury with
> the last bracketed paragraph in CALCRIM No. 226. That
> paragraph states: "If you decide that a witness deliberately lied
> about something significant in this case, you should consider not
> believing anything that witness says. Or, if you think the witness
> lied about some things, but told the truth about others, you may
> simply accept the part that you think is true and ignore the rest."

22
23
24
25
26
27
> The attorneys and the trial judge reviewed the jury instructions
> before the trial judge instructed the jury. Defendant's trial counsel
> expressly agreed it was appropriate to instruct the jury pursuant to
> CALCRIM No. 226 as given. Based on that agreement, the
> Attorney General now argues defendant's appellate challenge
> should be rejected as invited error. Defendant counters that the
> invited error doctrine does not bar our review because defendant's
> trial counsel did not state a "'conscious, deliberate, or tactical
> reason'" for agreeing to the instruction. (Quoting People v. Collins
> (1992) 10 Cal.App.4th 690, 694–695.)

28
> Under the invited error doctrine, a defendant may not challenge a
> jury instruction given by the trial court if defendant's trial counsel

made a deliberate and conscious tactical choice to request or acquiesce in the instruction.  (<u>People v. Thornton</u> (2007) 41 Cal.4th 391, 436; <u>People v. Catlin</u> (2001) 26 Cal.4th 81, 150; People v. Collins, supra, 10 Cal.App.4th at pp. 694–695.)  The deliberate tactical purpose need not be expressly articulated as such; it can be shown by the actions and argument of trial counsel taken as a whole.  (<u>People v. Avalos</u> (1984) 37 Cal.3d 216, 229; <u>see also</u> People v. Marshall (1990) 50 Cal.3d 907, 931–932.)

In closing argument, defendant's trial counsel challenged Scott's credibility and pointed out the inconsistencies in Scott's pretrial statements and testimony.  Trial counsel urged the jurors to consider the various factors listed in CALCRIM No. 226 in deciding who and what to believe.  The record demonstrates that trial counsel's agreement to instruct the jury with CALCRIM No. 226, including the bracketed last paragraph, was a deliberate tactical choice, not "mere unconsidered acquiescence."  (<u>People v. Avalos, supra</u>, 37 Cal.3d at p. 229.)  Accordingly, the invited error doctrine applies and defendant cannot challenge the instruction on appeal.

In any event, the trial court did not err in giving the instruction.  With unusual candor, defendant testified he is a liar, he lies to get what he wants, he would probably lie to get himself out of trouble, and he would lie to minimize his own criminal conduct.  That testimony supported giving the bracketed instruction.

Defendant argues the challenged paragraph directed the jurors that they "should" disbelieve him.  But that is not true.  The instruction merely directed the jurors to "consider" not believing a witness if they find the witness deliberately lied.  (<u>People v. Warner</u> (2008) 166 Cal.App.4th 653, 658 (<u>Warner</u>).)

Defendant claims the challenged paragraph necessarily impaired the jury's credibility-determining function in a case where the defense depended substantially on defendant's testimony, adding that the paragraph should not be given when a defendant testifies because a criminal defendant "always in theory has a motive to lie."  However, the California Supreme Court rejected challenges to similar instructions.  (<u>People v. Carey</u> (2007) 41 Cal.4th 109, 130–131 [CALJIC No. 2.21.2 does not lower burden of proof]; <u>People v. Maury</u> (2003) 30 Cal.4th 342, 428–429 [CALJIC No. 2.21.2 does not create "probability of truth" standard]; <u>People v. Beardslee</u> (1991) 53 Cal.3d 68, 94–95 [CALJIC No. 2.21 is correct statement of law and does not require jury to reject any testimony]; <u>People v. Lang</u> (1989) 49 Cal.3d 991, 1023–1024 [CALJIC No. 2.21 properly given].)

Defendant argues CALCRIM No. 226 is different from CALJIC No. 2.21.2 because CALCRIM No. 226 more strongly encourages a jury to reject defendant's entire testimony if it finds a material falsehood somewhere in his testimony.  But in <u>Warner</u>, <u>supra</u>, 166 Cal.App.4th at page 658, the Court of Appeal compared the language of the two instructions and concluded they are both facially neutral.  The court added that the instructions "apply to all

witnesses who testify at trial" and "focus no more on the defendant's testimony than on that of any other witness." (Ibid.) We find the analysis in Warner persuasive and choose to follow it. Accordingly, defendant has not established instructional error.

Callies, 2013 WL 2433814, at *2-3.

In the petition before this court, petitioner argues that he was prejudiced by the challenged instruction because it encouraged the jury to believe the victim's "fabricated" version of the events and to disbelieve his own testimony. (ECF No. 1 at 8.) Petitioner contends that the victim's description of the robbery was false in material respects. He also argues that the victim's story changed over the course of the investigation after he realized that the vehicle he hit in the parking lot did not belong to petitioner and that he had essentially been scammed.

Petitioner has attached to his habeas petition several documents to support his allegation that the victim's testimony was false. Those documents include the following:

- A District Attorney's Cover Sheet, which states in a section entitled "case summary" that the victim agreed to take petitioner to the ATM in order to pay for the damage to his car, and that Stepter told police that petitioner showed him a "toy gun" earlier in the evening (id. at 16-17);

- A transcript of the victim's 911 call (id. at 21);

- A "report of investigation" written by a defense investigator, which summarizes several factual statements made by the victim that are internally inconsistent and differ from the surveillance video of the event (id. at 27-29);

- A summary of a prison telephone conversation between petitioner and a visitor, wherein petitioner states that he did not rob anyone and did not have a gun, and that the victim willingly took him to the ATM machine in order to pay for the damage to the car. (id. at 31-33.)

Petitioner argues the victim's statements were "conflicting," "false," and contrary to the facts uncovered after an investigation of the incident. (Id. at 7.) He argues that he has "become the victim of the circumstances per this error of instruction which stems from the falsified statement of [the victim]." (Id.) Petitioner also appears to be arguing that the surveillance video

7

1  of the events in the parking lot should have been produced at his trial.  (Id.)

2          Petitioner notes that the jury found "not true" the allegation that he personally used a

3  firearm during the incident.  (See Clerk's Transcript on Appeal at 154.)  He argues that this not

4  true finding "voids" the victim's testimony that a gun was "involved" in the incident.  (ECF No. 1

5  at 8.)  Petitioner also argues that the victim never believed he was in "imminent danger," as

6  evidenced by the fact that he voluntarily went with petitioner to the ATM machine.  (Id.)

7  Petitioner summarizes his arguments as follows:

8          Based upon the fact that [the victim] felt once overed by Petitioner,
          is when he started to fabricate the story of the events at hand, and in
9          a form of retaliation he made it his purpose to have [petitioner]
          punished for the illegal term of 7 years to life.
10

11  (Id. at 9.)

12          **A.  Applicable Legal Standards**

13          In general, a challenge to jury instructions does not state a federal constitutional claim.

14  Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir.

15  1983).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely

16  'undesirable, erroneous, or even "universally condemned,"' but must violate some due process

17  right guaranteed by the fourteenth amendment."  Cupp v. Naughten, 414 U.S. 141, 146 (1973).

18  The appropriate inquiry "is whether the ailing instruction . . . so infected the entire trial that the

19  resulting conviction violates due process."  Middleton v. McNeil, 541 U.S. 433, 437 (2004)

20  (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)).

21          "[A] single instruction to a jury may not be judged in artificial isolation, but must be

22  viewed in the context of the overall charge."  Id.  (quoting Boyde v. California, 494 U.S. 370, 378

23  (1990)) (internal quotation marks omitted).  "Instructions that contain errors of state law may not

24  form the basis for federal habeas relief."  Gilmore v. Taylor, 508 U.S. 333, 342 (1993).  "If the

25  charge as a whole is ambiguous, the question is whether there is a 'reasonable likelihood that the

26  jury has applied the challenged instruction in a way' that violates the Constitution."  Dixon v.

27  Williams, 750 F.3d 1027, 1033 (9th Cir. 2014), as amended on denial of reh'g and reh'g en banc

28  (June 11, 2014) (citations omitted).

1    Petitioner is entitled to relief on this jury instruction claim only if he can show prejudice.

2    Dixon, 750 F.3d at 1034.  Prejudice is shown for purposes of habeas relief if the trial error had a

3    "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

4    Abrahamson, 507 U.S. 619, 637 (1993).  A reviewing court may grant habeas relief only if it is

5    "'in grave doubt as to the harmlessness of an error.'"  Id. (quoting O'Neal v. McAninch, 513 U.S.

6    432, 437 (1995)).

7        **B. Analysis**

8        As set forth above, the California Court of Appeal concluded that the trial court did not

9    violate state law in instructing the jury with the optional paragraph of CALCRIM No. 226.  That

10   conclusion is binding on this court.  Horton v. Mayle, 408 F.3d 570, 576 (9th Cir. 2005.)

11   Petitioner is not entitled to federal habeas relief on a claim alleging a violation of state law.  In

12   order to prevail on his federal due process claim, petitioner must demonstrate that the trial court's

13   instruction "so infected the entire trial that the resulting conviction violates due process."  Estelle,

14   502 U.S. at 72.  Petitioner has failed to make the required showing.

15       Petitioner is claiming that the challenged jury instruction rendered his trial fundamentally

16   unfair because it encouraged the jury to disregard his testimony and to credit the victim's false

17   and misleading testimony.  This court disagrees with petitioner's underlying premise.  As

18   explained by the California Court of Appeal, the challenged instruction did not require or even

19   encourage the jury to believe one witness' testimony over the testimony of another witness.  It

20   simply confirmed the common sense notions that: (1) if a person deliberately lies about

21   something significant, everything else he/she is saying might also be untrue; and (2) sometimes

22   people tell only the partial truth.  The jurors were given the opportunity to listen to petitioner's

23   version of the events and to the victim's version of the events.  Contrary to petitioner's

24   allegations, the instruction did not tell the jury who to believe, invade the jury's fact finding

25   function, or dictate any particular result.  As such, the instruction did not render petitioner's trial

26   fundamentally unfair.  This is true even though petitioner believes the victim was fabricating

27   some or all of his testimony.  The jury is the arbiter of the facts and they chose to believe the

28   victim.

1      The court also notes that petitioner's trial counsel used the concepts contained in the

2   challenged jury instruction to bolster his arguments that the victim's testimony was inconsistent

3   and incredible.  This underscores the fact that the instruction was not directed to the testimony of

4   any particular witness, but was applicable to all witnesses equally.  Under the circumstances of

5   petitioner's trial, giving the challenged jury instruction did not violate petitioner's right to due

6   process.  The decision of the California Court of Appeal rejecting petitioner's jury instruction

7   claim is not contrary to or an unreasonable application of controlling United States Supreme

8   Court authority.  Accordingly, petitioner is not entitled to federal habeas relief.[2]

9      **IV.    Conclusion**

10      Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

11   habeas corpus be denied.

12      These findings and recommendations are submitted to the United States District Judge

13   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14   after being served with these findings and recommendations, any party may file written

15   objections with the court and serve a copy on all parties.  Such a document should be captioned

16   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17   shall be served and filed within fourteen days after service of the objections.  Failure to file

18   _____

19   [2]  In the traverse, petitioner provides a list of "reassert[ed] claims," including: (1) prosecutorial
misconduct in "witness persuading, concealing facts, and perjury;" (2) ineffective assistance of

20   trial and appellate counsel; (3) "multiple Marsden hearings prejudicing petitioner;" and (4) a
violation of his rights "to cross-examine [the] witnesses against him."  (ECF No. 15 at 3-4.)  In a

21   declaration under penalty of perjury, petitioner explains that he asked his appellate counsel to
raise claims of ineffective assistance of trial counsel and prosecutorial misconduct but counsel

22   failed to do so.  (Id. at 7.)  To the extent petitioner is attempting to belatedly raise new claims in
the traverse, relief should be denied.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.

23   1994) (a traverse is not the proper pleading to raise additional grounds for relief); Greenwood v.
Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994) ("we review only issues which are argued

24   specifically and distinctly in a party's opening brief").  Even if these claims had been properly
raised, they are unexhausted, vague, conclusory, unsupported by argument or citation to the

25   record, and fail to demonstrate a constitutional violation.  See Jones v. Gomez, 66 F.3d 199, 204

26   (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("It is well-settled that
'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant

27   habeas relief'")).  Accordingly, petitioner is not entitled to habeas relief on any new claims

28   mentioned in the traverse.

1  objections within the specified time may waive the right to appeal the District Court's order.

2  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

3  1991).  In his objections petitioner may address whether a certificate of appealability should issue

4  in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

5  Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

6  enters a final order adverse to the applicant).

7  DATED: February 29, 2016

8  _Allison Claire_

9  ALLISON CLAIRE
   UNITED STATES MAGISTRATE JUDGE